# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# AT LEXINGTON

| | |
|---|---|
| DAVID COYLE, individually and d/b/a TEAM COYLE PHOTOGRAPHY, <br><br> Plaintiff, <br><br> V. <br><br> UNIVERSITY OF KENTUCKY, et al., <br><br> Defendants. | CIVIL ACTION NO. 5:12-369-KKC <br><br><br> **OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a motion to dismiss brought by four defendants in this case: the University of Kentucky, the University Athletics Committee of the University of Kentucky Board Of Trustees, Eric N. Monday, and Mitchell S. Barnhart. (DE 30). These four defendants (the "University defendants") contend that the claims brought against them are barred by sovereign immunity and must be dismissed. To the extent that Barnhart and Monday are sued in their individual capacities, they argue that the plaintiffs have failed to allege facts sufficient to sustain a claim against them. For the following reasons, the Court will grant the University defendants' motion.

## BACKGROUND

David Coyle is a professional photographer in Lexington, Kentucky who has taken photographs for the University of Kentucky and the University of Kentucky Athletics Association[1] since 1988. In his Complaint (DE 1) and Amended Complaint (DE 29), Coyle alleges that between 1988 and 2010 he entered into a series of varying contracts to

---

[1] According to the pleadings, the Athletic Association was dissolved in 2012 and the parties in this case—the University and the University Athletics Committee—assumed the obligations, responsibilities, and liabilities of UKAA.

photograph the University's varsity intercollegiate athletics teams. Although the terms of these contracts varied, Coyle's position is that he retained ownership of the copyrights to all the images he produced.

According to Coyle, the University defendants engaged in "a series of strategic partnerships" through which they used Coyle's photographs for various commercial activities. (DE 1, ¶ 27). Because Coyle claims to retain ownership of the copyrights, he alleges that such usage by the University defendants and other private defendants constitutes a violation of his exclusive rights under 17 U.S.C. § 106. He seeks a declaratory judgment that he is the owner of the copyrights in question, damages for copyright infringement, and injunctive relief.

## DISCUSSION

The University defendants present two grounds for dismissal of Coyle's claims. First, they claim that the doctrine of sovereign immunity under the Eleventh Amendment precludes suit against the University, the Athletics Committee, and Barnhart and Monday sued in their official capacities. Second, to the extent that Barnhart and Monday are sued in their individual capacities, the defendants contend that Coyle has failed to allege facts sufficient to connect them personally to any alleged copyright infringement. The Court will address each claim in turn.

**I.  Sovereign Immunity Precludes Suit against the University Defendants**

With few exceptions, the doctrine of sovereign immunity bars private lawsuits against states without their consent. *See Federal Maritime Com'n v. South Carolina State Ports Authority*, 535 U.S. 743, 751–52 (2002); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). If the state has not voluntarily waived sovereign immunity, a party may bring suit in cases where Congress has validly abrogated the state's immunity. *See Florida*

*Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 635–36 (1999). In limited circumstances, a private party may bring suit even without a valid abrogation or waiver of immunity. Under the doctrine of *Ex parte Young*, a state official sued in their official capacity may be enjoined from taking action that violates federal law. *See Diaz v. Michigan Dept. of Corrections*, 703 F.3d 956, 964 (2013). In the present case, the plaintiff asserts that his copyright claims are not barred against the University defendants because Congress validly abrogated sovereign immunity for copyright claims when it passed the Copyright Remedy Clarification Act (CRCA), Pub. L. No. 101-553, 104 Stat. 2749 (Nov. 15 1990), and that—at the very least—*Ex parte Young* allows the suit against Barnhart and Monday to proceed.

### A.  Congress Did Not Validly Abrogate Sovereign Immunity in the CRCA

Courts engage in a two-part test to determine whether Congress validly abrogated a state's sovereign immunity. "Because abrogation of sovereign immunity upsets the fundamental constitutional balance between the Federal Government and the States, and because States are unable directly to remedy a judicial misapprehension of that abrogation, the Court has adopted a particularly strict standard for evaluating whether Congress has abrogated the States' sovereign immunity." *See Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990) (internal quotations omitted). Under the two-part test, courts evaluate whether (1) Congress has unequivocally expressed an intent to abrogate a state's immunity and (2) validly done so pursuant to the Fourteenth Amendment. *See Florida Prepaid*, 527 U.S. at 635–36.

Both parties agree in this case that Congress intended to abrogate sovereign immunity when it passed the CRCA. Coyle provides a lengthy and persuasive account as to Congress's intent (DE 34, at 5–13), and the plain language of the CRCA is unmistakable in this regard.

3

The statute states that "[a]ny State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the Eleventh Amendment . . . or under any other doctrine of sovereign immunity, from suit in Federal court . . . for a violation of any of the exclusive rights of a copyright owner . . . ." 17 U.S.C. § 511(a). Because Congress's intent to abrogate is so clear, the first prong of the test is satisfied. Therefore, the issue turns on whether the abrogation was valid.

The Court finds that the CRCA's attempt at abrogation is invalid because the law was passed pursuant to the Copyright Clause found in Article I, Section 8 of the U.S. Constitution, and Congress cannot abrogate sovereign immunity under its Article I powers. (DE 30-1, at 6–7). In *Florida Prepaid*, the Supreme Court explained that "Congress may not abrogate state sovereign immunity pursuant to its Article I powers." *Florida Prepaid*, 527 U.S. at 636. From this, the Court held that Congress's attempt to abrogate state sovereign immunity in the Patent Remedy Act cannot be justified under either the Commerce Clause or the Patent Clause as both arise under Article I. *Id.* Similarly, the CRCA is invalid to the extent that it abrogates sovereign immunity under the Copyright Clause, which is also part of Article I.

The plaintiff argues that there is a difference between a copyright and a patent, but the Court finds that any difference is immaterial given that Congress is granted the authority to regulate them both under Article I. If Congress cannot abrogate state sovereign immunity under Article I *at all*, it makes no difference whether it has done so for copyrights or patents. This is especially true given that the authority to regulate copyrights and patents derives from the same constitutional provision. *See* U.S. Const., Art. I, Sec. 8 ("To

4

promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.").

Alternatively, the plaintiff submits that the CRCA can be justified under Section 5 of the Fourteenth Amendment. In his response memorandum, Coyle summarily concludes that because Congress has the right to pass enforcement legislation under Section 5, the Court should find that the CRCA was validly enacted pursuant to the Fourteenth Amendment. He argues that "[t]he fundamental problem with [the conclusion that the CRCA was not passed pursuant to the Fourteenth Amendment] is that it sidesteps the issue that Congress has the clear right under the Fourteenth Amendment to enforce provisions of the Amendment through 'appropriate legislation.'" (DE 34, at 12–13). Coyle says nothing else to support his claim that the Fourteenth Amendment, rather than Article I, is the proper constitutional provision under which the CRCA should be evaluated.

As Coyle suggests, Congress has the clear authority to pass enforcement legislation under Section 5 to abrogate state sovereign immunity. Unlike Article I, the power to abrogate sovereign immunity under Section 5 is well-established. *See Florida Prepaid*, 527 U.S. at 636–37 (citing *Seminole Tribe*, 517 U.S. at 59, and *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976)). "[T]he Fourteenth Amendment, by expanding federal power at the expense of state autonomy, [ ] fundamentally altered the balance of state and federal power struck by the Constitution." *Seminole Tribe*, 517 U.S. at 59.

The Court is not persuaded, however, that Section 5 is the means by which Congress passed the CRCA. In his memorandum, Coyle relies extensively on the House Report accompanying the CRCA as evidence of Congress's intent to abrogate state sovereign immunity. (DE 34, at 5–13). But where the report demonstrates Congress's intent to abrogate, it also demonstrates that Congress passed the CRCA pursuant to the Copyright

5

Clause of Article I. *See* H.R. Rep. No. 101-282(I), at 7 (1990).[2] Thus, the Court finds that the CRCA was passed pursuant to its Article I powers, not those established under the Fourteenth Amendment.

Several courts have analyzed whether the attempted abrogation would be valid even if it had been passed pursuant to the Fourteenth Amendment, rather than Article I, and all of them found that the abrogation would still be invalid. *See Jacobs v. Memphis Convention and Visitors Bureau*, 710 F. Supp. 2d 663, 674–82 (W.D. Tenn. 2010); *Chavez v. Arte Publico Press*, 204 F.3d 601 (5th Cir. 2000); *De Romero v. Institute of Puerto Rican Culture*, 466 F. Supp. 2d 410, 416–18 (D.P.R. 2006). Coyle has not provided a single reason to suggest that the CRCA was passed pursuant to Section 5. Moreover, Congress was explicit in invoking Article I when passing the CRCA and "[t]here is no suggestion in the language of the statute itself, or in the House or Senate Reports of the bill which became the statute, that Congress had in mind" Section 5 of the Fourteenth Amendment. *Florida Prepaid*, 527 U.S. at 641 n. 7 (noting that a statute that clearly invokes the constitutional provision on which Congress is relying to pass it "precludes consideration" of alternative justifications). As such, this Court need not venture further and finds that the CRCA does not validly abrogate state sovereign immunity.

---

[2] The House Report explains why the CRCA is necessary by distinguishing its powers under the Fourteenth Amendment from its powers under Article I. Unlike Article I, the Report noted that Congressional power to abrogate sovereign immunity under the Fourteenth Amendment "has been repeatedly upheld" by the Supreme Court. See H.R. Rep. No. 101-282(I), at 7 (1990). The CRCA, however, was passed after the Supreme Court held in *Pennsylvania v. Union Gas*, 491 U.S. 1 (1989), that Congress had the power to abrogate immunity under Article I. *See id*. ("Congress' power under the Fourteenth Amendment has been repeatedly upheld, but in *Pennsylvania v. Union Gas*, the Court held that Congress has the power to abrogate under the Commerce Clause of Article I. The Committee believes that the Union Gas reasoning applies equally to the Copyright Clause of Article I."). The Supreme Court subsequently overruled its holding that Congress could abrogate immunity under Article I, but it remains the case Congress relied on the Copyright Clause, not the Fourteenth Amendment, to pass the CRCA.

B. *Coyle Has Not Brought a Valid Claim under Ex Parte Young*

A second exception to state sovereign immunity is for suits brought under the *Ex parte Young* doctrine. Coyle contends that even if his suit for damages is barred by the Eleventh Amendment, he may proceed under *Ex parte Young* to the extent that he seeks prospective injunctive relief against Barnhart and Monday in their official capacities. The University defendants, however, argue that Coyle has failed to bring a valid *Ex parte Young* action because (1) *Ex parte Young* cannot be used to declare who owns disputed property, and (2) Coyle has failed to allege an ongoing violation of federal law by Barnhart or Monday. The Court finds that Coyle has failed to allege an ongoing violation of federal law and thus cannot prevail on his *Ex parte Young* claim against Barnhart and Monday.[3]

"To ensure the enforcement of federal law, [ ] the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). Thus, when bringing a claim against a state official in their official capacity, the doctrine of *Ex parte Young* permits suit so long as the individual "seek[s] prospective relief to end a continuing violation of federal law." *See Diaz*, 703 F.3d at 964. An *Ex parte Young* action is available only when the state official being sued has taken—or is about to take—an action. *See Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1414–1416 (6th Cir. 1996) ("*Young* abrogates a state official's Eleventh Amendment immunity when a suit challenges the constitutionality of a state official's *action*."). But "*Young* 'does not insulate from Eleventh Amendment challenge

---

[3] The University defendants and Coyle dispute whether or not an *Ex parte Young* action can be used when seeking a declaration as to who owns a copyright. But Coyle does not seek a declaratory judgment against Barnhart and Monday (DE 29, at 6–9), and *Ex parte Young* cannot be used in an action against the state itself or its agencies. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Moreover, this question is rendered moot given the Court's finding that Coyle's *Ex parte Young* action is insufficient on other grounds. The Court therefore need not reach this novel question of law.

7

every suit in which a state official is the named defendant . . . *Young* applies only where the underlying authorization upon which the named official *acts* is asserted to be illegal.'" *Id.* at 1417. In that regard, the state official sued in an *Ex parte Young* action must bear a "sufficient connection" to the challenged act, and it is not enough to simply claim that by virtue of their office they have the general authority to take the allegedly illegal action. *See id.* at 1416 (noting that "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law").

In this case, Coyle claims that Barnhart and Monday, by virtue of their office, "approved of, condoned or acquiesced in the" alleged copyright infringement described in the complaint. (DE 29, at 5–6). But in the amended complaint, Coyle does not allege a single "affirmative act" that Barnhart and Monday "took . . . through their respective positions." The amended complaint, in describing the factual allegations to support claims against Barnhart and Monday, states only that:

> To the extent the individual occupying [Barnhart or Monday's] position at all times relevant hereto approved of, condoned or acquiesced in the actions referred to in numerical paragraph 6, those actions were necessarily contrary to law and act to strip that individual of any official immunity otherwise conferred on that individual as a matter of law.

(DE 29, at 5–6, repeated throughout ¶¶ 62–64). In regard to Barnhart, Coyle additionally states that "[a]t all times relevant hereto, the University's Director of Athletics was responsible for pertinent actions and transactions of the University affecting and pertaining to intercollegiate athletics, including but not limited to financial transactions affecting the intercollegiate athletics program." (DE 29, at 5, ¶¶ 63–64). Similarly, with respect to Monday, Coyle states in his complaint that "[a]t all times relevant hereto, the University's Executive Vice President for Finance and Administration was responsible for pertinent

8

financial transactions of the University, including but not limited to those occurring on the Lexington Campus." (DE 29, at 5, ¶¶ 62).

Coyle's argument, then, is that Barnhart and Monday are responsible for general decisions regarding finances and athletics and can therefore be sued *to the extent that* the person holding their respective offices took action violating federal law. But Coyle does not claim that Barnhart and Monday actually took actions that "approved of, condoned or acquiesced" in the alleged infringement. In fact, Coyle does not even claim that a generic officeholder in Barnhart or Monday's position would necessarily take these actions. Instead, he states that such an officeholder would be subject to suit only "to the extent that" he took these illegal actions; not that he necessarily *must have* taken illegal actions. This distinction is critical. As the Sixth Circuit Court of Appeals has stated, "general authority" to take illegal action "is not sufficient to make government officials the proper parties to litigation challenging the law." *Children's Healthcare*, 92 F.3d at 1416. Coyle has alleged only that Barnhart and Monday had general duties that might require approving of, condoning, or acquiescing to acts constituting copyright infringement. He has not identified any acts taken by Barnhart and Monday that brought about the alleged copyright infringement. Accordingly, the Court finds that Coyle has failed to make out a viable claim under *Ex parte Young* allowing him to proceed with his suit against Barnhart and Monday in their official capacities.

## II. Coyle Has Not Alleged Any Facts Sufficient to Establish Liability Against Monday and Barnhart in Their Individual Capacities

The lack of specificity in Coyle's complaint creates similar problems for his claims against Monday and Barnhart in their individual capacities. To avoid a 12(b)(6) dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as

9

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court must view the allegations in the complaint in the light most favorable to the plaintiffs, treating all well-pleaded facts as true, but need not accept bare legal conclusions as definitive. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).

As explained above, Coyle does not allege any actions by Barnhart and Monday that would render them liable for copyright infringement. Rather, he cites to the general duties that accompany their respective offices to draw an inference that they might have, at the very least, "approved of, condoned or acquiesced in" the infringing activities. But this is insufficient to survive a motion to dismiss. Even taken as true, Coyle's allegations do not identify any particular wrongdoing by Barnhart and Monday. When Coyle alleges that "[t]o the extent the individual occupying [Barnhart or Monday's] position at all times relevant hereto approved of, condoned or acquiesced in" the copyright infringement, he implicitly concedes that he does not know if—and therefore cannot allege that—Barnhart and Monday ever actually did approve of, condone, or acquiesce in the allegedly wrongful acts. Without more, Coyle cannot sustain a claim against either of these defendants, and the motion to dismiss is therefore granted. *See Green v. Nicholas Cnty. School District*, 756 F. Supp. 2d 828, 830 (E.D. Ky. 2010) (noting that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief").

## CONCLUSION

Because the claims against the University defendants are barred by sovereign immunity and Coyle failed to allege facts against Barnhart and Monday sufficient to state a claim to relief, **IT IS ORDERED** that the University defendants' motion to dismiss (DE 30) is **GRANTED**.

Dated this 4th day of March, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY